789 F.2d 1348
 PLANNED PARENTHOOD OF CENTRAL AND NORTHERN ARIZONA, an
Arizona non-profit corp.; Planned Parenthood of Southern
Arizona, an Arizona non-profit corp.; Jack Bashaw, M.D., on
behalf of himself, his patients, and all others similarly
situated, Plaintiffs-Appellees,
v.
The STATE OF ARIZONA; Bruce E. Babbitt, individually and as
Governor of the State of Arizona; William Jamieson,
individually and as Director of the Department of Economic
Security; Robert K. Corbin, individually and as Attorney
General of the State of Arizona, their employees, agents,
representatives, successors, and those acting in concert
with them and all others similarly situated, Defendants-Appellants.
 No. 85-1612.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1986.
Decided May 15, 1986.
 
 Larry Rosenfeld, Sacks, Tierney & Kasen, Phoenix, Ariz., for plaintiffs-appellees.
 Anthony B. Ching, Sol. Gen., Phoenix, Ariz., for defendants-appellants.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED and HALL, Circuit Judges, and KELLEHER*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 This is an appeal from a district court's grant of a summary judgment holding unconstitutional, as sought to be applied against Planned Parenthood and its patients, a portion of an Arizona appropriation bill and awarding attorneys' fees to the plaintiffs. We affirm the district court's judgment on the merits, modify the attorneys' fee award, and award attorneys' fees on appeal.
 
 I.
 FACTS
 
 2
 Arizona participates in a Title XX federal grant program that provides federal reimbursement for 90% of the expenditures Arizona makes for certain family planning services. Arizona allocates 10% matching funds to pay for these services. See Planned Parenthood v. Arizona, 718 F.2d 938, 941 (9th Cir.1983) (Planned Parenthood I ). This controversy has its origins in a restriction on use of the state funds for abortion-related activities. The restriction was contained in a two-paragraph footnote to the Arizona bill appropriating the state's ten percent matching funds. It consists of two paragraphs and reads as follows:
 
 
 3
 No state money may be spent by the department of economic security by contract, grant or otherwise, on abortions, abortion procedures, counseling for abortion procedures or abortion referrals. These restrictions are not applicable when it is necessary to save the life of the pregnant woman.
 
 
 4
 No state money, other than money for comprehensive medical and dental care and the developmentally disabled, may be given by the department of economic security by contract, grant or otherwise to agencies or entities which offer abortions, abortion procedures, counseling for abortion procedures or abortion referrals. Governmental agencies or entities are exempt from restrictions in this paragraph.
 
 
 5
 1980 Ariz. Sess. Laws 842, 860 n *.
 
 
 6
 Planned Parenthood of Central and Northern Arizona and Planned Parenthood of Southern Arizona (collectively referred to as Planned Parenthood) brought suit to enjoin enforcement of this footnote. They argued that the footnote is an unconstitutional restriction on their freedom of speech and is void for vagueness. In 1982, the district court held that the footnote is unconstitutional on both first amendment grounds and vagueness grounds. In 1983, this circuit held that the statute is not unconstitutionally vague. Planned Parenthood I, 718 F.2d at 949. Its resolution of the first amendment issue was more complex.
 
 
 7
 The first paragraph of the Arizona statute prohibits the use of state funds for abortion-related services. Relying on Maher v. Roe, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d, (1977), Planned Parenthood I upheld this portion of the statute. See 718 F.2d at 942-44. The second paragraph of the statute prohibits use of state funds by organizations that offer abortion-related services, even if the state funds themselves are not used for abortion-related services. Planned Parenthood in our first encounter characterized this portion of the statute as a penalty designed to chill the exercise of the constitutional right to provide abortions. The State argued to the Planned Parenthood I panel that this second paragraph of the statute was constitutional because, since it was impossible for the state to monitor use of the funds to prevent their use for abortion-related services, it was a measure necessary to the enforcement of the constitutionally proper first paragraph. The Planned Parenthood I panel remanded "to give the State the opportunity to prove that withdrawing all state funds from Planned Parenthood was the only way to ensure that Planned Parenthood would not use state funds to support its abortion-related activities." Id. at 946.
 
 
 8
 On remand, the district court received depositions on this issue and granted summary judgment for Planned Parenthood. The State appeals. It argues, first, that the district court erred in granting summary judgment for Planned Parenthood, second, that the district court included improper costs in the fee award; and, third, that the district court erred in awarding Planned Parenthood an upward adjustment of the attorneys' fee award above the "lodestar" amount. Planned Parenthood also seeks attorneys' fees for the cost of defending against the State's appeal.
 
 II.
 MOOTNESS
 
 9
 The State in its first argument appears to frame a strange and simplistic proposition. It proceeds as follows. Planned Parenthood of Northern and Central Arizona spent funds on "counseling for abortion procedures or abortion referrals" that had their source, in part, in State funds. This expenditure demonstrates that "withdrawing all state funds from Planned Parenthood ... [is] the only way to ensure that Planned Parenthood would not use state funds to support its abortion-related activities." Id. at 946. This, in turn, removed any cloud of possible unconstitutionality from paragraph two of the Arizona footnote and rendered any dispute on this issue moot.
 
 
 10
 The flaw in the argument is that Planned Parenthood's expenditure by no means demonstrates that withdrawal of funds is necessary to prevent violation of the footnote's first paragraph. The argument of the State renders this court's remand in Planned Parenthood I an exercise in futility. Had we assumed, as the State does in its argument, that any expenditure on abortion-related activities necessarily is derived from state funds at least to the extent of ten cents on the dollar, the remand would have been pointless. The constitutionality of the second paragraph on the basis of this assumption should have been confronted in Planned Parenthood I. Not having done so, we obviously rejected the State's assumption. We proceeded on the basis that it was the burden of the State to show that ear-marking of state funds for non-abortion-related activities and a system of tracing reasonably susceptible to auditing by state officials was not possible to create.
 
 
 11
 Thus, the question before us is whether the State has made such a showing. It is not moot. See 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3533, at 212 (1984).
 
 III.
 CONSTITUTIONALITY OF THE STATUTE
 
 12
 We review the district court's grant of summary judgment de novo. See, e.g., Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983).
 
 
 13
 Turning to the merits, we note that neither of the parties have attempted to persuade us to reconsider the Planned Parenthood I decision. Moreover, it is clear that on remand the showing made by the State does not establish the impossibility of monitoring funds. Affidavits by State officials charged with distributing the funds, which are not controverted, established that monitoring was feasible. See Excerpt of Record (E.R.) at 40-41 (deposition of Guy Mikkelsen); id. at 43 (deposition of Betty DeGraw).
 
 
 14
 Planned Parenthood also produced substantial evidence before the district court on the issue of feasibility of monitoring. Finally, in its brief to this court, the State has conceded that the spending practices of the Southern Arizona branch of Planned Parenthood adequately segregate state funds from abortion-related services. Appellant's Opening Brief at 9 n. 3.
 
 
 15
 The State contends that the spending practices of Planned Parenthood of Northern and Central Arizona demonstrate the impossibility of monitoring. This is simply not so. The State to monitor effectively need not be present at every client and patient interview. The fact is that the State has not attempted to monitor expenditures by Planned Parenthood. The most that can be said is that misuse of funds is possible so long as the State fails to monitor spending. This is a far cry from evidence that monitoring is not possible.
 
 
 16
 In short, Planned Parenthood has submitted convincing evidence on the feasibility of monitoring the funds. The State has not controverted that evidence and even admits that Planned Parenthood of Southern Arizona has successfully segregated state funds from its abortion-related expenditures. We hold, after a de novo review, that the district court's grant of summary judgment on the constitutionality of paragraph two of the Arizona footnote as applied against Planned Parenthood and its patients was proper.
 
 IV.
 ATTORNEYS' FEES IN THE DISTRICT COURT
 
 17
 Because Planned Parenthood prevailed in the litigation, the district court awarded it attorneys' fees under the Civil Rights Attorney Fee Award Act of 1976, 42 U.S.C. Sec. 1988. It calculated the award in two steps. First, it multiplied the number of hours Planned Parenthood attorneys spent on the case by the customary hourly rates of those attorneys. This produced the "lodestar amount." Second, it increased that award by a multiplier of ten percent. The State objects to this award on two fronts. First, it argues that the award included "excessive, redundant, or otherwise unnecessary" costs. Appellant's Opening Brief at 12-13. Second, it challenges the application of the multiplier in light of Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).
 
 
 18
 At the outset we note that determination of attorneys' fees "is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." Rutherford v. Pitchess, 713 F.2d 1416, 1420 (9th Cir.1983); see Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) (emphasizing "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters"). We also acknowledge that looking over the shoulders of attorneys to examine their charges is not a task welcomed by judges. Fee shifting makes our scrutiny necessary, however. Even though our competence to undertake this scrutiny is limited at best, we must assume the burden because at present no other bearer is available. Somebody must decide what fees should appropriately be shifted to the loser. No doubt our "incompetence" in this area is no greater than it is in many others in which we are compelled to render decisions; and it is, I suspect, our limited ability to avoid decisionmaking, in comparison to that enjoyed by the other two great branches of government, that induces many litigants to crowd our portals.
 
 
 19
 So, in full awareness of our limitations, we address the issue of attorneys' fees.
 
 A. The "Excessive" Costs Issue
 
 20
 The State relies on Hensley v. Eckerhart for its argument that the district court's award forces the State to reimburse Planned Parenthood for improper expenses. Hensley discussed the adjustments district courts should make in section 1988 awards when plaintiffs have been only partially successful. In the course of that discussion, the Court explicated its views on calculation of the lodestar amount. The Court's ideas regarding excess cost are both reasonable and not unusual:
 
 
 21
 Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."
 
 
 22
 461 U.S. at 434, 103 S.Ct. at 1939 (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)) (emphasis by Copeland court).
 
 
 23
 Hours expended in pursuit of unsuccessful claims in civil rights cases were treated as follows:
 
 
 24
 Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 
 
 25
 Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation....
 
 
 26
 Id. 461 U.S. at 435, 103 S.Ct. at 1940.
 
 
 27
 Neither hours not properly billed to one's client nor hours expended on discrete and unsuccessful claims exist in this case. The State lists four categories of attorney effort to which it objects:
 
 
 28
 time spent for the unsuccessful attempt to name the State of Arizona as a defendant; their attempt at garnishment to collect the previously awarded attorneys' fees judgment; the time spent on whether the preliminary injunction appeal was moot pursuant to this Court's request; and the time spent on the void-for-vagueness issue which this Court has decided in the defendant's favor.
 
 
 29
 Appellant's Opening Brief at 12. We think that a reasonable client who had received the results obtained in this litigation would not cavil at being billed for these ancillary efforts. We also think that it is improper in this case to categorize any of these efforts as discrete claims. The thrust of this lawsuit was Planned Parenthood's effort to continue receiving state funds. All of these activities are aimed at that result. We hold that all of the challenged activities are properly compensable by an attorneys' fee award under section 1988.
 
 B. Use of a Multiplier Issue
 
 30
 We approach the use of a multiplier somewhat differently, however. In Planned Parenthood I, the panel concluded that "there is nothing to suggest that the court abused its discretion in any way in determining the appropriate 'multiplier' or adjustment factor." 718 F.2d at 951. First, because the panel vacated the fee award when it remanded the case for further factfinding on the first amendment claim, we are not bound by the Planned Parenthood I panel's consideration of the attorneys' fee issue. It is clear that the court's evaluation of the use of the multiplier was dicta. See 718 F.2d at 951.[1] Moreover, because the Supreme Court has recently decided a case on this question, Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), we are less inclined than we might ordinarily be to adopt the conclusions of the prior panel without independent consideration. See Kimball v. Callahan, 590 F.2d 768, 771-75 (9th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); White v. Murtha, 377 F.2d 428, 431-32 (5th Cir.1967); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4478, at 790-91 (1981).
 
 
 31
 Planned Parenthood suggests two justifications for imposition of a multiplier in this case: the plaintiff's success in the lawsuit and the contingency of recovery. Our examination of Blum v. Stenson convinces us that neither of these factors justifies the use of a multiplier in this case.
 
 
 32
 In Blum v. Stenson, the Court discussed the manner in which a plaintiff could justify a section 1988 fee award in excess of the lodestar amount. The Court stated that "[t]he burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant." 465 U.S. at 898, 104 S.Ct. at 1548. The Court went on to reverse the district court's imposition of a multiplier because the plaintiff "introduced no evidence that enhancement was necessary to provide fair and reasonable compensation." Id. at 901, 104 S.Ct. at 1550.
 
 
 33
 Planned Parenthood attempts to justify use of the multiplier by pointing to the success of their efforts. This is inadequate justification. As the Supreme Court pointed out in Blum v. Stenson, see id. at 900, 104 S.Ct. at 1549, adequate compensation for the success of a civil rights plaintiff will normally be secured by an award based on the number of hours billed and the billing rate of the attorneys. Many clients with reasonable bargaining power would insist upon paying no more. We do not think the State of Arizona should be required to shoulder a greater burden.
 
 
 34
 The Supreme Court also addressed the factors of risk and contingency of recovery as bases for upward fee adjustments. The Court seemed to approve an adjustment based on "risks associated with the litigation or claim that the risk of nonpayment required an upward adjustment to provide a reasonable fee." Id. at 901, 104 S.Ct. at 1550; accord LaDuke v. Nelson, 762 F.2d 1318, 1332-33 (9th Cir.1985) (EAJA case); Hall v. Borough of Roselle, 747 F.2d 838, 843 (3d Cir.1984) (section 1988 case). The Court's language apparently refers to the contingent fee arrangement common to many areas of the law. At oral argument, however, counsel for Planned Parenthood conceded that the fee arrangement in this case was not contingent.
 
 
 35
 Planned Parenthood's argument is slightly different. It argues that the controversial nature of the abortion issue makes "risky" the representation of clients like Planned Parenthood. It argues that controversial representation may have an adverse effect on the law firm's other business by soiling its reputation. We recognize that the "undesirable" nature of a case is an appropriate factor in determining attorneys' fees. See, e.g., Kerr v. Screen Extras Guild, 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 719 (5th Cir.1974), cited with approval in S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (legislative history of Sec. 1988), reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5913.
 
 
 36
 Nevertheless, we reject this contention as a justification for the imposition of a multiplier in this case. Controversial representation is just as likely to bolster the reputation of a law firm as it is to harm it. Planned Parenthood may have its enemies; but it also has many friends. It is hardly a pariah. Moreover, there is no evidence in the record that the representation actually posed a substantial risk to the law firm's business or that any risk presented was not adequately taken into consideration in setting the hourly rate. The Supreme Court's opinion in Blum predisposes us against the use of a multiplier unless the successful plaintiff has demonstrated that a lodestar amount does not represent a fully compensatory fee. The plaintiffs in this case have made no such showing, but rely instead on abstract arguments in their brief. Accordingly, we reverse the district court's judgment to the extent that it applied a multiplier in calculating the fee award.
 
 V.
 ATTORNEYS' FEES ON APPEAL
 
 37
 Planned Parenthood seeks attorneys' fees on appeal under section 1988. As the Supreme Court has noted, "a prevailing [civil rights] plaintiff ' "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." ' " Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 4 (quoting Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)), reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5912). Planned Parenthood clearly has prevailed on the merits of this appeal. There are no circumstances making such an award unjust. We hold, therefore, that Planned Parenthood is entitled to attorneys' fees for the reasonable expenses of this appeal. The judgment of the district court is affirmed in part, reversed in part.
 
 
 38
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 On this point we stated: "[W]e vacate the attorneys' fee award pending the outcome on reconsideration. However, we note that we find nothing improper in the manner in which the district court computed the attorneys' fee." In this circuit, dicta are "not part of the law of the case." Russell v. Commissioner, 678 F.2d 782, 785 (9th Cir.1982). We are, therefore, free to disregard our earlier statements on this point