803 F.2d 987
 55 USLW 2266
 Ruth CLARK and Charles E. Bunker, Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES and the Los Angeles Police Department,
Defendants-Appellants.
Ruth CLARK and Charles E. Bunker, Plaintiffs-Appellants,
v.
CITY OF LOS ANGELES; City Attorney Burt Pines;
Councilwoman Pat Russell; Los Angeles Police Dept.;
L.A.P.D. Officer Smith (Ser. # 20585); Officer John
D'Amicus; Officer Alphonso Moreno; Officer Thomas Stead;
Lt. Donald Ferguson; L.A.P.D. Venice Area Team Supervisor
Sergeant Atchison; and Sol Walzer, Defendants-Appellees.
 Nos. 85-6343, 85-6382.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1986.
Decided Oct. 29, 1986.
 
 John B. Murdock, Santa Monica, Cal., for plaintiffs-appellees.
 Katherine Hamilton, Dist. City Atty., Los Angeles, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, FARRIS and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 In these consolidated appeals, both sides asked us to review the district court's award of $87,360 in attorney's fees to plaintiffs' counsel under 42 U.S.C. Sec. 1988.
 
 BACKGROUND
 
 2
 In February 1977, plaintiffs Ruth Clark and Charles Bunker filed this civil rights action against the City of Los Angeles, the Los Angeles Police Department and various individuals. The dispute involved plaintiffs' operation of open-air retail businesses on Ocean Front Walk at Venice Beach, California. Plaintiffs claimed that defendants denied them due process of law by discriminatorily and selectively enforcing provisions of the Los Angeles Municipal Code against them and by attempting to harass and intimidate them. Plaintiffs sought monetary and injunctive relief.
 
 
 3
 Shortly thereafter, the district court granted plaintiffs a preliminary injunction. The court found that Los Angeles police officers had, for a substantial period of time, interrupted plaintiffs in the conduct of their business, often several times a day, demanding to see plaintiffs' licenses, permits and other documents, while not asking the same of other merchants similarly situated.
 
 
 4
 The matter went to trial in November 1978, and a jury awarded plaintiffs $60,000 in damages. We reversed and remanded because a hearsay document was improperly introduced into evidence at the trial. Clark v. City of Los Angeles, 650 F.2d 1033 (9th Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982).
 
 
 5
 For undisclosed reasons, retrial of this matter was delayed several times. Finally, in April 1983, plaintiffs filed a voluntary motion to dismiss the action with prejudice, specifically reserving their right to seek attorney's fees under 42 U.S.C. Sec. 1988. Plaintiffs noted that, since the trial, the harassment had ceased and they had been able to operate their businesses continuously and without interference. Plaintiffs stated that they did not wish to go through the trauma and pressure of another trial when they already had most of the relief they had sought. The district court granted the motion to dismiss.
 
 
 6
 Plaintiffs sought attorney's fees for work performed before and during the trial, on appeal, and after remand, including the time spent seeking fees. The district court found that plaintiffs were prevailing parties in the action. Accordingly, it awarded fees at a rate of $95 per hour[1] for services performed before and during trial, adjusting counsel's claim downward to reflect unsuccessful claims raised and subtracting certain fees already paid. In addition, the court awarded fees for 30 of the 46 hours claimed for fee-petition work, at a rate of $150 per hour.[2] The court refused to award fees for counsel's work on the appeal. The court found, therefore, that counsel was entitled to a lodestar fee amount totaling $58,240.
 
 
 7
 Counsel had requested that the lodestar figure be adjusted for inflation and also be subject to a multiplier of two because of the risk involved in the litigation and the contingent nature of counsel's fee arrangement with plaintiffs. The district court, after careful application of the factors we set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), concluded that a multiplier of 1.5 was appropriate. The court did not make an adjustment for inflation. Accordingly, the court ordered defendants to pay $87,360 in attorney's fees.
 
 
 8
 On appeal, defendants challenge the finding that plaintiffs were prevailing parties. Alternatively, they argue: (1) that any fees awarded should be reduced because of the limited relief plaintiffs ultimately obtained; (2) that fees should not have been subject to a multiplier; and (3) that time spent pursuing fee petitions should not be recoverable at all and certainly should not be subject to any multiplier. On cross-appeal, plaintiffs challenge the district court's refusal to adjust fees for inflation and to award fees for work performed on the appeal.
 
 DISCUSSION
 I. Prevailing Party
 
 9
 Defendants first argue that the district court erred in finding plaintiffs to be prevailing parties within the meaning of 42 U.S.C. Sec. 1988. We disagree. Plaintiffs need not obtain formal relief in order to enjoy prevailing party status. E.g., Braafladt v. Board of Governors of the Oregon State Bar Ass'n, 778 F.2d 1442, 1443-44 (9th Cir.1985); American Constitutional Party v. Munro, 650 F.2d 184, 187 (9th Cir.1981). It is enough that plaintiffs received some of the benefit they sought in bringing the suit. E.g., Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983).
 
 
 10
 Whether a litigant has shown a sufficient causal relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court. We review the findings for clear error. Braafladt, 778 F.2d at 1444.
 
 
 11
 The district court's finding that plaintiffs were prevailing parties is not clearly erroneous. Although the damage award was reversed on appeal, the district court found that the harassment plaintiffs had experienced ended with the jury verdict. This result was the primary relief plaintiffs wanted. Plaintiffs qualify as prevailing parties.
 
 II. The Fee Award
 A. Standard of Review
 
 12
 A district court's award of attorney's fees will not be disturbed absent an abuse of discretion. Harris v. McCarthy, 790 F.2d 753, 756 (9th Cir.1986).
 
 B. Reduction for Limited Relief Obtained
 
 13
 Defendants argue that the district court abused its discretion by not reducing the fee awarded to reflect the limited relief obtained by plaintiffs. We disagree.
 
 
 14
 As we have already suggested, success in a lawsuit is not always measured by the formal relief obtained. See, e.g., Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). Here, although plaintiffs ultimately elected not to press their damages claim, they received formal injunctive relief. More important, they achieved the practical result they sought. The district court could properly award fees for the efforts of plaintiffs' attorney that led to the favorable practical outcome, even if they did not also lead to an award of damages. See also City of Riverside v. Rivera, --- U.S. ----, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466 (1986) (award of reasonable attorney's fee under Sec. 1988 not conditioned upon an award of money damages).
 
 C. Multiplier
 
 15
 Defendants next argue that it was an abuse of discretion for the district court to increase the lodestar fee amount by a multiplier of 1.5. Again, we cannot agree.
 
 
 16
 As the Supreme Court has held repeatedly, the "benchmark" for the award of attorney's fees is that the fee awarded must be "reasonable." E.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ----, 106 S.Ct. 3088, 3096-97, 92 L.Ed.2d 439 (1986) (construing section 304(d) of the Clean Air Act, 42 U.S.C. Sec. 7604(d) ). Although courts have struggled with different approaches for determining "reasonableness" in fee awards, the Supreme Court has established certain guidelines.
 
 
 17
 The district court's approach to awarding fees in this case is fully consistent with the procedure endorsed by the Supreme Court in Delaware Valley Citizens' Council. See id. at 3097-98. The district court first examined the record and determined the number of hours reasonably expended on the litigation. The court next determined a reasonable hourly rate for legal work at the time the services were performed, and it multiplied these two figures to establish the lodestar amount. See also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); Planned Parenthood of Central and Northern Arizona v. Arizona, 789 F.2d 1348, 1351 (9th Cir.1986).
 
 
 18
 This lodestar figure is presumptively a reasonable fee. As the Supreme Court held in Blum v. Stenson, 465 U.S. 886, 897-900, 104 S.Ct. 1541, 1547-49, 79 L.Ed.2d 891 (1984), many factors previously identified by courts as probative on the issue of "reasonableness" of a fee award, see, e.g., Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), are subsumed within the initial calculation of the lodestar amount.[3] See also Delaware Valley Citizens' Council, 106 S.Ct. at 3098.
 
 
 19
 Nonetheless, the Supreme Court has recognized that adjustments, both upward and downward, to the lodestar amount are sometimes appropriate, albeit in "rare" and "exceptional" cases. Id.; Blum, 465 U.S. at 898-901, 104 S.Ct. at 1548-50. The possibility of adjustments to the lodestar amount necessitates an analysis of various factors that could justify an adjustment. In this circuit, the relevant factors were identified in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975). Although several of these factors are now considered to be subsumed within the calculation of the lodestar figure, see supra, review of the Kerr factors remains the appropriate procedure for considering a request for a fee-award adjustment.
 
 
 20
 After making detailed findings on each of the Kerr factors, the district court exercised its discretion to increase the fee because of the contingent nature of the fee arrangement with the plaintiffs, recognizing the risk and delay in payment inherent in these fee arrangements. This adjustment was fully justified in light of the purpose of section 1988 and other analogous fee-award statutes.
 
 
 21
 The legislative purpose behind section 1988 was recently reviewed by the Supreme Court in City of Riverside v. Rivera, --- U.S. ----, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). In cases covered by section 1988, the plaintiffs seek to vindicate civil and constitutional rights guaranteed to everyone. Through these suits, plaintiffs act as private attorneys general and often secure important results that benefit society as a whole. Congress recognized that the importance of these societal benefits is frequently not reflected in the nominal or relatively small damage awards that these cases produce. As a result, skilled attorneys were often unable or unwilling to prosecute civil rights cases despite the dramatic infringements of rights that were sometimes involved.
 
 
 22
 Congress's response to this problem was to enact section 1988 as an exception to the general rule that each party to a lawsuit shall bear its own attorney's fees. The goal was to ensure a reasonable attorney's fee so that when constitutional violations occurred, competent counsel would be willing to come forward and assist the wronged parties in the vindication of their rights. See generally id. at 2694-97.
 
 
 23
 The risk and delay involved in contingent fee arrangements have long been seen as justifications for the relatively large fees often resulting in contingency cases. It is consistent, then, to conclude, as we do, that a contingent-fee arrangement may justify an upward fee adjustment when the record shows that an adjustment is necessary to award counsel the "reasonable" fee to which he is entitled under section 1988. Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. at 1547 (1984); see also id. at 903, 104 S.Ct. at 1551 (Brennan, J., concurring).[4]
 
 
 24
 The facts of this case illustrate clearly the need for an upward fee adjustment for contingency arrangements in some cases. Plaintiffs' case was rejected by at least 10 other attorneys before Mr. Murdock agreed to assist them. Despite what the district court described as the "extreme undesirability of this case," Mr. Murdock stayed with this litigation throughout and helped produce the practical result that his clients sought. The district court found that Mr. Murdock's involvement with this matter "necessarily precluded" him from accepting other employment for which compensation may have been guaranteed. He has waited nine years to be paid for his services. Moreover, until the jury reached a verdict, it was never clear that he would receive anything for his efforts. Based on our review of the record and of the district court's detailed findings, we conclude that the court correctly found this to be one of the "rare" and "exceptional" cases in which an upward adjustment is justified.[5] See Delaware Valley Citizens' Council, 106 S.Ct. at 3098 (citing Blum v. Stenson, 465 U.S. 886, 898-901, 104 S.Ct. 1541, 1548-50, 79 L.Ed.2d 891 (1984)). There was no abuse of discretion in multiplying the fee for services before and during trial by 1.5.
 
 D. Fees for Fee Motions
 1. Availability of Fees
 
 25
 Defendants next argue that it was an abuse of discretion to award any fees for counsel's work on his own fee petitions. This argument is frivolous. We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable. E.g., In re Nucorp Energy, Inc., 764 F.2d 655 (9th Cir.1985) (citing cases); see Harris v. McCarthy, 790 F.2d 753, 758-59 (9th Cir.1986).
 
 2. Multiplier
 
 26
 Even if fees can be recovered for fee-motion work, defendants argue that it was an abuse of discretion to apply the multiplier to these fees along with the fees for trial and pretrial work. We agree.
 
 
 27
 Once plaintiffs' attorney arrived at the fee-petition stage, he represented the prevailing parties. Although some risk and delay still existed, both of these hazards were greatly diminished by the time the fee hearing was held. Accordingly, the factors that justified an upward adjustment for fees associated with the trial were generally absent or at least greatly reduced for litigation of the fee petition. Of course, other factors that justify an upward adjustment may be present in fee-petition litigation. See Kerr, 526 F.2d at 70. But nothing in this record indicates that any of these factors are present here. Use of the multiplier to increase the fees for fee-petition work was an abuse of discretion.
 
 
 28
 The district court awarded $6750 for fee-petition work, representing a lodestar figure of $4500 multiplied by 1.5. Only the lodestar amount should have been awarded. Accordingly, the district court's fee award must be reduced by $2250.
 
 E. Adjustment for Inflation
 
 29
 Plaintiffs argue on cross-appeal that the district court abused its discretion by not adjusting the fees awarded for inflation. We disagree.
 
 
 30
 Inflation's effect on a fee award is an inherent result of delay in litigation. Delay, as we have held, is one reason a contingent-fee arrangement may justify an upward adjustment in a fee award. See also Johnson v. University College of the University of Alabama in Birmingham, 706 F.2d 1205, 1210-11 (11th Cir.), cert. denied, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). Likewise, the diminution of a fee by high inflation could, in a court's discretion, justify a separate upward adjustment.
 
 
 31
 But while adjustments may be justified because of inflation, they are not invariably required, any more than a contingency multiplier is. See Louisville Black Police Officers Organization, Inc. v. City of Louisville, 700 F.2d 268, 274-75 (6th Cir.1983). The standard under section 1988 is a reasonable fee in light of all of the circumstances. The district court reached its fee decision in light of the totality of the circumstances, applying the many factors we have identified as relevant. One of the factors leading to award of a multiplier was delay in payment.[6] There was no abuse of discretion in refusing to adjust the fee for inflation.
 
 F. Fee for Appeals Work
 
 32
 Finally, plaintiffs complain that fees should have been awarded for work on the unsuccessful appeal in this case. We find no abuse of discretion.
 
 
 33
 It may be quite proper for a court to award fees for an unsuccessful appeal when the party claiming fees ultimately prevails on retrial. It may even be proper to award fees when the prospect of retrial can be shown to be the catalyst that induces a defendant finally to provide the practical relief a plaintiff seeks. But in this case, the litigants decided to abandon their claim after losing on appeal. They did so primarily because the trial itself produced the practical result they sought. Although they were prevailing parties in the case overall, it is clear that nothing associated with the appeal contributed to any favorable result achieved by the litigation. Accordingly, it was not an abuse of discretion for the district court to exclude these hours when determining a reasonable fee in light of the results achieved.
 
 CONCLUSION
 
 34
 We affirm the district court's award of attorney's fees in this case in all respects except for the court's application of the multiplier to fees awarded for litigating the fee application. The improper use of the multiplier for fee-motion work requires the district court's award to be reduced by $2250. Accordingly, we modify the judgment of the district court to award attorney's fees to plaintiff in the amount of $85,110. In all other respects, we affirm the judgment of the district court. Appellees may recover costs and reasonable attorney's fees on the appeal. Each party is to bear its own costs on the cross-appeal.
 
 
 35
 AFFIRMED AS MODIFIED.
 
 
 
 [1]
 The court found that $95 per hour was a reasonable and customary fee for legal work in 1977-78
 
 
 [2]
 The court found that $150 was a reasonable fee for legal work in 1983. Counsel had requested $175 per hour
 
 
 [3]
 Among the factors that the Blum Court held subsumed within the initial calculation are "the novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained." Blum, 465 U.S. at 898-900, 104 S.Ct. at 1548-49. The Supreme Court recently determined that "superior performance" by an attorney will also not justify an upward adjustment since the attorney's agreement to represent a client necessarily involves an obligation to "perform to the best of his ability" and "to produce the best possible results" under the circumstances. Delaware Valley Citizens' Council, 106 S.Ct. at 3098-99. The district court here did not base its upward fee adjustment on any of the factors the Supreme Court has held subsumed in the calculation of a lodestar amount
 
 
 [4]
 We are, of course, aware that the Supreme Court has specifically reserved the question of whether "risk of loss" can justify an upward adjustment in a fee award. See Delaware Valley Citizens' Council, 106 S.Ct. at 3100
 
 
 [5]
 Our conclusion here is fully consistent with our recent decision in Planned Parenthood of Central & Northern Arizona v. Arizona, 789 F.2d 1348 (9th Cir.1986). In that case, we reaffirmed that " 'risks associated with the litigation' " or " 'risk of nonpayment' " might require an upward adjustment to provide a reasonable fee. Id. at 1353 (quoting Blum v. Stenson, 465 U.S. at 901, 104 S.Ct. at 1550). We further confirmed that the "undesirable" nature of a case is an appropriate factor in determining a reasonable fee. Id. at 1354. Nonetheless, we reversed the district court's use of a multiplier in that case. We held that the controversial nature of the case did not, by itself, constitute the sort of "risk" that justifies an upward adjustment in a fee award. Id. at 1353-54. Our conclusion was carefully tied to the facts of the case. For one thing, counsel for Planned Parenthood was not working on a contingent-fee basis. Id. at 1353. Moreover, the record included "no evidence" that "the representation actually posed a substantial risk to the law firm's business or that any risk presented was not adequately taken into consideration in setting the hourly rate." Id. at 1354. These facts are in marked contrast to the situation now before us
 
 
 [6]
 An adjustment for delay may represent an award of interest, an adjustment for inflation, or both. The rate of interest itself may reflect inflation. Factors of delay, interest and inflation therefore may overlap very substantially