Emil V. REAL, Plaintiff,

v.

The CONTINENTAL GROUP, INC., a corporation, and Continental Can Company, a corporation, Defendants.

No. C–83–2871.

United States District Court, N.D. California.

Feb. 11, 1987.

Guy Saperstein, Farnsworth, Saperstein & Seligman, Oakland, Cal., for Orrick, Herrington & Sutcliffe.

Janet Bentley, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

### BACKGROUND

In April 1985, I presided over the jury trial of Mr. Real's age discrimination action against his former employers, The Continental Group, Inc. and Continental Can Company. At the close of the plaintiff's case, I directed a verdict for the defendants on the plaintiff's common law contractual claims. Ultimately, however, Mr. Real prevailed; the jury found for the plaintiff with respect to his remaining claims arising under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* and a parallel California statutory provision, California Fair Employment and Housing Act (FEHA), Cal.Govt.Code § 12941. The jury returned a verdict in the amount of $265,820 in backpay and liquidated damages for willful discrimination.

A number of post-trial cross motions were filed. In resolving these motions, I offered the plaintiff the alternative of a new trial or a remittitur of the jury award for all damages in excess of $50,000. *See Real v. Continental Group*, 627 F.Supp. 434 (N.D.Cal.1986). The plaintiff consented to the offer of remittitur on February 6, 1986.

Now before me is the plaintiff's motion for an award of attorneys' fees and costs. The plaintiff's original trial attorneys, the firm of Orrick, Herrington & Sutcliffe (Orrick firm), retained the firm of Farnsworth, Saperstein & Seligman (fees counsel) to litigate the instant fee application. Fees

counsel have submitted an application for $570,187.75 in fees incurred for the litigation of the merits of this case. This amount represents 3,889 attorney and legal assistant hours multiplied by the various practitioners' respective hourly rates as well as an upward multiplier of 1.25. In addition, fees counsel have submitted their own application for fees incurred in litigating the fees petition; the amount claimed for this task is $32,955.43. Finally, fees counsel have applied to the court for an award of plaintiff's unrecovered costs in this matter: $32,775.23.

This fees application is extraordinary; Mr. Real's underlying case was not. Mr. Real was the single plaintiff, and although his case had its own peculiar facts, there was nothing unique or complicated about it. Extensive discovery was undertaken and a veritable paper blizzard occurred, but the case was neither exceptional nor complex. My review of the more than one hundred pages of computer billing provided by the Orrick firm reveals duplicitous efforts at nearly every step of litigation: in preparation, in trial and numerous telephone and office conferences involving one or two partners, together with a senior and junior associate and, perhaps, a legal assistant, as well.

■ I am left with a strong and persistent conviction that this case was overtried. Accordingly, to make an award of "reasonable" fees and costs, I find it necessary to make a significant downward adjustment to the fee request and to the amount of costs claimed. In sum, I believe that an award of attorneys' fees to the Orrick firm of $175,236.50 is appropriate. No award of fees will be made with respect to fees counsel, and an award of reasonable costs in the amount of $26,904.03 will be granted.

## ANALYSIS

■ In arriving at my calculations of what I deem to be reasonable fees and costs, I note that the defendants' counsel urges me to limit the plaintiff's attorney fee award to approximately $7,000. This amount represents fees incurred prior to the defendants' offer of settlement extended pursuant to Rule 68, Federal Rules of Civil Procedure, in September 1983. I decline to follow this suggestion.

The Supreme Court has held that despite the existence of a relevant fee-shifting statute, if a prevailing party ultimately recovers a judgment in an amount less than a prior offer made pursuant to Rule 68, Federal Rules of Civil Procedure, the prevailing party may not recover for attorneys' fees incurred after the offer was extended. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). In the instant case, defendants extended a Rule 68 offer of settlement consisting of the following terms: $35,000 in backpay, $7,000 in attorneys' fees then accrued and injunctive relief enjoining the defendants to reinstate Mr. Real to his former position with Continental. Defendants' counsel would have me quantify the value of the injunctive relief offered in September 1983, add that value to the defendants' monetary settlement offer, and then compare the sum of Mr. Real's ultimate award of $50,000 for purposes of applying *Marek*.

How does one quantify the value of injunctive relief? Defendants' counsel applies expert testimony offered at the trial in this case suggesting that Mr. Real suffered approximately $300,000 in economic loss because his employment with Continental was terminated. Thus, if the offer of reinstatement can be valued at approximately $300,000 and added to the other monetary terms of defendants' 1983 settlement offer, the resulting sum is far greater than the $50,000 judgment ultimately recovered by the plaintiff. Applying the rule set forth in *Marek*, defendants' counsel asserts that any fees incurred subsequent to the September 1983 settlement offer must be excluded from any award of fees.

Although I find the defendants' contention to be plausible, I decline to apply it in the instant case. Defendants' theory raises the problem identified by Justice Brennan in his dissent to *Marek:* The *Marek* majority provides no guidance for assess-

ing the value of nonpecuniary relief offered as part of a Rule 68 offer. *Marek, supra,* 105 S.Ct. at 3029 (Brennan, J., dissenting).

█ The imprecision inherent in making such an evaluation for the purposes of the *Marek* comparison persuades me that, without more direction, the better course is to compare monetary awards only. In so doing, it is clear that the plaintiff's $50,000 judgment exceeds the approximately $42,000 in monetary relief offered in 1983. Accordingly, *Marek* does not preclude an award of reasonable fees incurred by the plaintiff subsequent to September 1983. I will, therefore, proceed to evaluate the plaintiff's instant fee request pursuant to the guidelines set forth for determining reasonable fees and costs in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and its progeny.

Under both ADEA and FEHA, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. This calculation provides the court with a "lodestar" figure from which to start its calculations regarding reasonable attorneys' fees.

### A. *Hourly Rates*

Examining the question of appropriate hourly rates first, I am persuaded that certain of the rates requested by the Orrick firm and fees counsel are *not* "reasonable" for purposes of the fee-shifting statutes involved in the case at bar. The United States Supreme Court, the court of appeals for the ninth circuit and the California supreme court have all held that reasonable hourly rates must be calculated "according to the prevailing market rates in the relevant community" rather than a "cost-based" standard. *Blum v. Stenson,* 465 U.S. 886, 895–96, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984). *Accord White v. City of Richmond,* 713 F.2d 458, 461 (9th Cir.1983); *Serrano v. Unruh,* 32 Cal.3d 621, 639, 652 P.2d 985, 999, 186 Cal.Rptr. 754, 766 (1982).

Determining the reasonable or prevailing hourly rate is "inherently difficult." *Blum, supra,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. However, in my opinion, the principle recently articulated by the court of appeals for the sixth circuit facilitates this task: "[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986). In illustrating the application of this principle, the *Coulter* court asserted that:

> [Reasonable hourly rates are] different from the prices charged to well-to-do clients by the most noted lawyers in a region. Under these [fee-shifting] statutes, a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Id.*

█ This discourse on reasonable hourly rates is consistent with the Supreme Court's holding in *Blum.* The *Blum* decision rejects judicial application of cost-based standards for determining a reasonable hourly rate. *Blum, supra,* 465 U.S. at 893–896, 104 S.Ct. at 1546–1548. Thus, regardless whether the actual cost of legal services is lower than the prevailing market rate, as was the factual posture of the *Blum* case, or higher (as I believe is the situation in the case now before me), the determination of a reasonable hourly rate is not to be made by reference to the rates actually charged by the successful plaintiff's counsel, but by reference to the prevailing market. *See also White, supra,* 713 F.2d at 461.

Applying the *Coulter* court's guidance to the instant case, I am satisfied that $145 is the maximum reasonable hourly rate to be considered in calculating the lodestar in this case. $145 is the hourly rate charged for attorney Remmers' services. Of the 17 Orrick firm attorneys involved in this case, Remmers expended the greatest number of

hours. In light of attorney Remmers' extensive experience in the field of employment discrimination law, *see* Declaration of Cynthia L. Remmers in Support of Application for Award of Attorney's Fees, I am persuaded that her hourly rate reflects the market rate for competent attorneys in this field. Accordingly, I am convinced that hourly rates should not be calculated at greater than $145 per hour in this matter.

■ For those services incurred by attorneys whose normal hourly rate is claimed to be less than $145, I will award fees based on their actual hourly rate. This conclusion is consistent with the legislative history of fee-shifting statutes which suggests that reasonable fees are those "which are adequate to attract competent counsel, but which do not produce windfalls, S.Rep. No. 94–1011, p. 6, 1976 U.S.Code Cong. & Admin.News 5908, 5913. In my opinion, awarding fees based on an hourly rate of $145 to attorneys whose hourly rate ordinarily would be less than that amount would constitute a windfall.

I have undertaken a similar examination of the plaintiff's legal assistants' hourly rates. These range from $30 to $65 per hour. Most legal assistant hours are billed at a rate of $65 per hour. Therefore, I am satisfied that hourly rates as claimed are reasonable for purposes of calculating the lodestar in this matter.

## B. *Hours Expended*

■ With respect to determining which hours were "reasonably expended" for purposes of calculating the lodestar, the defendants' counsel correctly point out that hours expended on discrete and unsuccessful claims are not properly chargeable to one's adversary under fee-shifting statutes. The defendants list four categories of attorney effort to which they object in this regard: time spent on the plaintiff's claims for front pay and punitive damages, state common law claims and emotional distress claims. In my opinion, however, it is improper to categorize any of these areas as areas of discrete claims. They represent attempts to obtain reimbursement for the

defendants' discriminatory actions. The case was based on "a common core of facts.... Such a lawsuit cannot be viewed as series of discrete claims." *Hensley, supra,* 461 U.S. at 435, 103 S.Ct. at 1940. Thus, I am satisfied that the plaintiff's attorneys are not precluded from compensation because any of the challenged categories constituted areas of discrete and unsuccessful claims.

However, a fee petitioner carries the burden of establishing entitlement to the compensation claimed by showing that the number of hours claimed were expended reasonably. *Blum, supra,* 465 U.S. at 897, 104 S.Ct. at 1548; *Pennsylvania v. Delaware Valley Citizens' Council,* —— U.S. ——, 106 S.Ct. 3088, 3097–99, 92 L.Ed.2d 439 (1986). Plaintiff's counsel have failed to satisfy this burden. The plaintiff's application evidences a clear lack of "billing judgment" on the part of the Orrick firm. This case was overstaffed and the hours billed are "excessive, redundant or otherwise unnecessary." *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1939. I have, therefore, excluded a significant portion of the claimed hours consistent with *Hensley.* The following are examples from the Orrick firm's billing sheets which I believe illustrate the inflationary and unreasonable character of the compensable hours requested:

1. *Summary judgment opposition:*
From December 21, 1984, until January 4, 1985, five attorneys and one legal assistant from the Orrick firm are all reported to have been preparing opposing papers to the defendants' then pending motion for summary judgment. In so doing, they billed a total of 96 hours and would charge the plaintiff, or the opponent in this matter, $13,727.75 for this task.

2. *Pretrial statement preparation:*
From February 9–11, 1985, approximately 18.25 legal assistant hours and 41.25 attorney hours are recorded as expended for various stages of preparation of a pretrial statement. Multiplying these hours by the various rates claimed for

the individuals involved, preparation of this single pretrial statement is billed at $6,462.50.

3. *Document review and filing:*

On February 13 and 14, 1985, one of the Orrick firm's legal assistants expended and billed for 15.5 hours of organizing and filing unidentified documents. For this service, the Orrick firm is seeking remuneration in the amount of $992.50.

4. *One day of trial preparation:*

Trial preparation appears to have commenced around March 21, 1985, and lasted through the trial beginning April 8, 1985. Illustrative of the overstaffing and inflated billing practices for this period of litigation occurred on April 4, 1985, when four attorneys and three legal assistants billed for a total of 66.75 hours for a variety of trial preparation tasks. The amount sought for this single day of legal work is $7,307.50.

It would not be difficult to identify further extraordinary examples of either inflated billing, inefficient practice or lapses in billing judgment. In my opinion, the instances of unreasonably expended hours are too numerous to address specifically. I, therefore, deem it advisable to apply a 40% factor to the number of hours claimed in determining the legally proper lodestar figure. I find that this percentage (40% of the claimed hours) represents the reasonable number of hours expended by plaintiff's counsel on this individual age discrimination case.

I am unswayed by fees counsel's assertion that the number of hours claimed is reasonable because the number of hours expended by the defendants' counsel is comparable. While the number of hours incurred by the defendants' attorneys is relevant to this matter, I am not persuaded that such hours are ultimately dispositive of the issue. Both parties' hours could be inflated. Moreover, an age discrimination defendant's work is not coextensive with an age discrimination plaintiff's. For example, the time expended by a defendant's counsel to gather documents and information necessary to respond to a plaintiff's discovery demand is likely to be significantly greater than the time spent by plaintiff's counsel to draft the discovery requests.

Although the plaintiff's fees counsel argues to the contrary, it appears that the defendants' large number of legal hours may be, at least partially, attributable to the manner in which plaintiff's counsel conducted the case. Consider, as an example, the type of practice attending the fee application now before me. Plaintiff's fees counsel secured my permission to file an oversized memorandum in support of their application. Defendants' counsel, inspired by their opponents' enthusiasm, filed a similarly lengthy memorandum. In obtaining the court's permission so to file, the defendants' counsel cited the need for additional space in which to respond to the plaintiff's oversized brief. In my opinion, the time expended in preparing this petition and the corresponding duplicating and postage costs, are all out of proportion to the legitimate needs involved. With respect to this application, plaintiff's counsel set the frenzied pace. I have not been persuaded that plaintiff's counsel did not set such a pace earlier in this case.

## C. *Calculation of the Lodestar*

Applying the foregoing analysis, I calculate the lodestar amount of fees in this case to be $175,236.50. This amount represents the product of 40% of the compensable hours reported by the Orrick firm (1,555.60 hours) and corresponding hourly rates of no greater than $145 for attorneys and $65 for legal assistants.

## D. *Upward Adjustment Unwarranted*

Having calculated what I deem to be the reasonable lodestar figure in this case, I decline to make any upward adjustments. The lodestar figure is "presumed to be the reasonable fee" to which counsel is entitled. *Blum, supra,* 465 U.S. at 897, 104 S.Ct. at 1548. *See also Delaware Valley Citizens' Council,* 106 S.Ct. at 3098. "The burden of proving that such an adjustment is necessary to the determination of a reasonable fee is on the fee applicant."

*Blum, supra,* 465 U.S. at 898, 104 S.Ct. at 1548. Fees counsel have failed to satisfy this burden.

In determining whether to adjust the lodestar fee upward, or downward, "the most critical factor is the degree of success obtained.... A reduced fee award is appropriate if the relief, however, significant, is limited in comparison to the scope of the litigation as a whole." *Hensley, supra,* 461 U.S. at 436, 440, 103 S.Ct. at 1941, 1943. When compared to the number of hours ostensibly expended on this case, Mr. Real achieved a relatively modest recovery. I am, of course, mindful that there need not be strict proportionality between the amount recovered and the fee awarded. *City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Nevertheless, I believe that the gross disproportion between Mr. Real's recovery and the fee requested is a factor to be considered when deciding upon the propriety of adjustments.

My conclusion on this matter is consistent with the prevailing case law in this circuit. The court of appeals for the ninth circuit has held that adjustments to the lodestar "are sometimes appropriate albeit in 'rare' and 'exceptional' cases." *Clark v. City of Los Angeles,* 803 F.2d 987, 991 (9th Cir.1986). The prescribed procedure, when considering a request for a fee award upward adjustment, is to consider the various factors identified in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975). *See also Clark, supra,* 803 F.2d at 991.

Fees counsel assert that the following *Kerr* factors warrant an upward adjustment in the instant case: the existence of a contingent fee agreement, the undesirability of the case, preclusion of other work and delay in receipt of payment.

■ None of the factors identified by fees counsel is persuasive on this point. The fact that the plaintiff's counsel litigated this case pursuant to a contingent fee agreement does not warrant upward adjustment. Indeed, the risk of loss is already reflected in the fee award as I have calculated it; the fee to be awarded here is

significantly greater than that which would have been awarded pursuant to the contingent fee agreement. *Cf. Hamner v. Rios,* 769 F.2d 1404, 1408–09 (9th Cir.1985) (a statutory award is not excessive because it allows for recovery greater than a contingent fee agreement; however, the agreement is a relevant factor to consider).

■ Nor am I convinced that an upward adjustment is warranted because, as fees counsel assert, this case was "economically undesirable." *Cf. Clark, supra,* 803 F.2d at 992 (economic undesirability evidenced by case's rejection by 10 attorneys prior to prevailing attorney). Undesirability warranting upward adjustment of the lodestar should, in my opinion, arise from the particular case at issue rather than from what fees counsel characterize as the general "recognized undesirability of individual employment discrimination cases."

Moreover, upward adjustment is not necessary to compensate the Orrick firm for preclusion of other work. Although *Clark* recognized that preclusion from compensation-guaranteed work may warrant application of an upward multiplier, such adjustment is appropriate only in cases where there is evidence that "the representation actually posed a substantial risk to the law firm's business or that any risk presented was not adequately taken into consideration in setting the hourly rate." *Clark, supra,* 803 F.2d at 992 n. 5 (quoting *Planned Parenthood of Central & Northern Arizona v. Arizona,* 789 F.2d 1348, 1354 (9th Cir.1986)). Because no evidence has been presented suggesting that the Orrick firm's business was substantially at risk, and because, as I have already indicated, I am persuaded that the risk involved in this case is adequately reflected in the lodestar calculation, I decline to apply an upward multiplier on grounds of work preclusion.

■ Finally, I remain unconvinced that the delay in payment is significant enough to warrant upward adjustment. The delay factor has been characterized as "minor." *See White, supra,* 713 F.2d at 462. In

*White,* the court determined that the plaintiff had achieved "exceptional success" and applied an upward multiplier of 1.5. In light of this exceptional success, the court also noted that the 2½ year delay between filing and payment was considered in arriving at its conclusion. Although I recognize that nearly four years have expired since the filing of this action, I believe that any delay in payment is not significant enough to warrant any upward adjustment in the absence of other factors so warranting.

### E. *Fees on Fees*

█ I also deem it advisable to deny an award of fees for the Farnsworth, Saperstein & Seligman firm in this case. A notable provision of the fee agreement between Emil Real and the Orrick firm indicates that if the Orrick firm engaged other attorneys or law firms to assist it, it would do so "at no additional fee to Client [Emil Real]." Accordingly, the Orrick firm could not have billed the plaintiff for additional fees charged by fees counsel. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1940 (emphasis in original) (quoting from *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)). Pursuant to this *Hensley* language, fees counsels' fees are not properly billed to the defendants.

Plaintiff's counsel contend that the fee agreement provision upon which I rely does not preclude an award of fees to the Saperstein firm. They assert that had fees counsel not litigated this issue, members of the Orrick firm would have undertaken the task. They conclude that fees counsels' bill is not an "additional fee." However, I am convinced that the "assistance" of fees counsels' firm necessarily involved some duplication of effort. The Orrick firm's billing record reveals that a substantial number of hours were billed for attorneys' fees work beginning in April 1985. I note, for instance, that on May 16, 1985, attorney Miller expended a portion of the six hours she recorded for that day researching *my* attorneys fees opinions in other cases. In February 1986, the Saperstein firm appears to have taken over the course of the fees litigation, thereby diminishing the value of nearly a year's worth of Orrick attorneys' fees work. I, therefore, conclude that fees counsels' charges are subsumed within the Orrick firm's fee award.

█ Even in the absence of the "no additional fee" provision appearing in the Real/Orrick fee agreement, I believe that an award of fees to fees counsel would not be appropriate in this case. It is true that the court of appeals for the ninth circuit has held that legal fees reasonably incurred in establishing entitlement to attorneys' fees are compensable in the fee award, *Jensen v. Stangel,* 790 F.2d 721, 722 (9th Cir.1985); *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118, 1126 (9th Cir.1981); *Manhart v. City of Los Angeles,* 652 F.2d 904, 909 (9th Cir.1981). "On the other hand, if the attorney's initial claims are exorbitant, or the time spent in advancing them unreasonable, the district court should refuse further compensation.... The court must satisfy itself of the overall fairness and reasonableness of the fee under all circumstances." *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978), *cited with approval in Manhart, supra,* 652 F.2d at 909. In light of the duplication of effort between fees counsel and the Orrick firm, as well as what I have already recognized as unnecessary time expended in preparation of the two memoranda of points and authority in support of the instant fees petition, I am not persuaded of the "overall fairness and reasonableness" of an additional award to fees counsel.

Moreover, retention of an outside law firm to litigate the single issue of attorneys' fees creates a "second major litigation" contrary to the clear admonition appearing in *Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941 ("[A] request for attorney's fees should not result in a second major litigation."). The court of appeals for the third circuit has recognized this problem, expressing concern about fee disputes that assume "massive proportions,

**744**

perhaps even dwarfing the case in chief."
*Lindy Bros., Inc. v. American Radiator,*
540 F.2d 102, 116 (3rd Cir.1976). In order
to discourage future fees litigation of these
proportions, I deem it advisable to deny
fees counsels' application in the instant
case.

### F. *Costs*

■ Finally, fees counsel request an
award of reasonable costs in this case in
the amount of $32,775.23. This amount is
excessive and must be reduced. The bill of
costs submitted in support of the request
includes a bill for $5,871.20 for word pro-
cessing. Plaintiff's fees counsel would
have me obligate the defendants for the
cost of word processing everything from
notices of motions to numerous drafts of
closing arguments. However, reasonable
hourly rates awarded already include over-
head and profit. In my opinion, the kind of
word processing services charged as costs
in this case must be considered a category
of office overhead for which the defend-
ants are already obligated to pay.

Accordingly, I will award the plaintiff his
costs, other than those for word process-
ing, in the amount of $26,904.03.

### CONCLUSION

Therefore, IT IS ORDERED that Emil V.
Real is entitled to judgment against The
Continental Group, Inc. and Continental
Can Company in the sum of $175,236.50, as
reasonable attorneys' fees pursuant to 29
U.S.C. § 621, *et seq.* and Cal.Gov't Code
§ 12965.

IT IS ALSO ORDERED that the defend-
ants, The Continental Group, Inc. and Con-
tinental Can Company, are entitled to judg-
ment dismissing the application of Emil V.
Real for attorneys' fees incurred in litigat-
ing the attorneys' fees award, pursuant to
29 U.S.C. § 621, *et seq.* and Cal.Govt.Code
§ 12965.

IT IS FURTHER ORDERED that Emil
V. Real is entitled to judgment against The
Continental Group, Inc. and Continental
Can Company in the sum of $26,904.03, as

reasonable costs, pursuant to 29 U.S.C.
§ 621 *et seq.* and Cal.Govt.Code § 12965.