Jennell CARR and Phyllis Sierra, individually, on behalf of all others similarly situated, and the general public, Plaintiffs,

v.

TADIN, INC., Defendant.

Case No. 12–CV–3040 JLS (JMA).

United States District Court, S.D. California.

Signed Dec. 5, 2014.

Kas L. Gallucci, Ronald Marron, Alexis M. Wood, Beatrice Skye Resendes, Law Offices of Ronald A. Marron APLC, San Diego, CA, for Plaintiffs.

Larry M. Arnold, James W. Denison, Cummins & White LLP, Newport Beach, CA, for Defendant.

**ORDER: (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS (ECF Nos., 43, 40)**

JANIS L. SAMMARTINO, District Judge.

Presently before the Court is Plaintiffs Jennell Carr and Phyllis Sierra's ("Plaintiffs," or, "Class Representatives") Motion for an Order Granting Final Approval of Class Action Settlement (ECF No. 43), as

well as Defendant Tadin, Inc.'s ("Defendant") Statement of Non–Opposition (ECF No. 45), the sole objection to the settlement (Decl. of Ronald A. Marron in Supp. of Mot. for Final Approval ("Marron Decl.") Ex. 1, ECF No. 43–1), and the Declaration of Compliance by Class Action Administrator Gajan Retnasaba (ECF No. 41). Also before the Court are Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards (ECF No. 40), the Declaration of Posting of Fee Motion by Class Action Administrator Gajan Retnasaba (ECF No. 43–2), and Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Class Counsel's Motion for Attorneys' Fees and Costs (ECF No. 49). A final approval hearing was held on July 21, 2014. (ECF No. 46.) Having considered the Motions and the law, the Court **GRANTS** final approval of the class action settlement and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Fees, Costs, and Incentive Awards.

## BACKGROUND

This case arises out of Defendant's purported misrepresentations concerning certain of its weight loss teas and dietary supplements ("the Products"). (Mot. for Final Approval 6, ECF No. 43.) Plaintiffs allege claims including breach of express and implied warranties and violations of the Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; the False Advertising Law ("FAL"), California Business and Professions Code § 17500 *et seq.*; and the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.* (*See generally* 1st Am. Compl., ECF No. 17.)

The Court preliminarily approved the Settlement Agreement on April 18, 2014, 2014 WL 7497152. (ECF No. 37.) The Court held a final approval hearing on July 21, 2014. (ECF No. 46.)

## TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

The proposed settlement class ("the Settlement Class," or, "the Class") consists of "[a]ll U.S. consumers who purchased the Products (listed in Exhibit A to the Agreement) for household or personal use during the Class Period (December 21, 2008 to the Objection Deadline, as set by the Court)." (Settlement Agreement ¶ 7.1, ECF No. 34–2.)

The January 6, 2014 Settlement Agreement requires Defendant to provide the Settlement Class with injunctive relief by modifying the labeling of and packaging for the Products. (*Id.* ¶ 4.1.) The Settlement Agreement does not provide the Settlement Class with any monetary relief, purportedly because (1) the CLRA would have precluded a damages award at trial, (2) "[i]t would be cost prohibitive to implement a claims procedure to refund" the average price of the Products, which is approximately $2 per box, and (3) the injunctive relief is a substantial and more important form of relief. (Mot. for Final Approval 9–10, ECF No. 43; Settlement Agreement ¶ 4.1, ECF No. 34–2.)

Defendant agreed to pay: (1) $50,000 to Class Counsel for the purpose of providing notice to the class; (2) $297,000 in attorneys' fees and costs; and (3) incentive awards of $1,500 to each of the Class Representatives. (Settlement Agreement ¶¶ 5.1, 9.1, ECF No. 34–2.) In exchange, Plaintiffs and the Settlement Class release all of their claims, known and unknown, against Defendant. (*Id.* ¶¶ 6.1–6.4.)

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A threshold requirement for final approval of the settlement of a class action is

the assessment of whether the Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the types of class actions enumerated in subsection (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019, 1022 (9th Cir.1998). No facts that would affect these various requirements have changed since this Court preliminarily approved the Class on April 18, 2014. Accordingly, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Preliminary Approval Order. (*See* Prelim. Approval Order 3–9, ECF No. 34.)

■ Moreover, before granting final approval of a class-action settlement, the Court must determine that the Class received adequate notice. *Hanlon,* 150 F.3d at 1025. "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* This Court preliminarily approved the parties' proposed notice plan ("the Notice Plan"). (*See* Prelim. Approval Order 12–15, ECF No. 34.) On June 20, 2014, class action administrator Classaura ("Classaura," or "the Class Action Administrator") filed a declaration detailing the actions it has taken with regard to this class action, including providing notice. (*See generally* EC No. 41.) A review of the declaration and attached exhibits reveals that Classaura provided notice in accordance with the Notice Plan. Accordingly, the Court finds that the Class received adequate notice of the Settlement.

■ Finally, under Federal Rule of Civil Procedure 23(e)(2), where the proposed settlement would bind class members, the court may approve it only after a hearing and on finding that the settlement is fair, reasonable, and adequate. The Ninth Circuit has enumerated various factors that the court should consider in determining whether a proposed settlement meets the fair, reasonable, and adequate

standard, including, *inter alia:* (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Hanlon,* 150 F.3d at 1026. This determination is committed to the sound discretion of the trial judge. *Id.*

The Court held a final approval hearing on July 21, 2014. (ECF No. 46.) The Court now addresses each of the *Hanlon* factors in turn.

## I. Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

■ Plaintiffs state that they are "confident in the strength of their claims" and "believe that they could obtain class certification, at least of a California class, defeat dispositive motions filed by Defendant, and proceed to trial on the merits," where they believe they could meet their evidentiary burden. (Mot. for Final Approval 13, ECF No. 43.) Nonetheless, "Plaintiffs recognize Defendant has factual and legal defenses that, if successful, would defeat or substantially impair the value of Plaintiffs' claims." (*Id.*) Moreover, the claims admittedly involve complex issues of law that would require extensive resources and time to research and resolve. (*Id.*) Settlement eliminates these risks. (*Id.* at 13–14.) Given that full litigation of these issues would be a timely and costly endeavor not guaranteed to yield any benefit to the Class, the Court finds that these

factors weigh in favor of approving the settlement.

## II. Risk of Maintaining Class Action Status Throughout the Trial

Plaintiffs urge that Defendant would have opposed certification had the case not settled and that potential issues of ascertainability may have prevented the class from being, or remaining, certified. (*Id.* at 16–17.) In light of Defendant's nonobjection to certification for the purposes of settlement only, the Court finds that this factor favors approving the settlement.

## III. Amount Offered in Settlement

The Settlement Agreement provides for injunctive relief, namely the redesigning of the labeling and packaging of the Products. (*Id.* at 17.) This relabeling is purportedly "the relief [Plaintiffs] most desire." (*Id.* at 18.) The Settlement Agreement also provides for Defendant to pay: (1) the costs of notice to the class, (2) the Class's reasonable attorney's fees, and (3) incentive awards to the Class Representatives. (*Id.* at 17.) Plaintiffs urge that the relief offered is "substantial" and "should not be underestimated." (*Id.* at 17–18.)

Although the Settlement Agreement's failure to provide any monetary relief is a disappointment to the Court, Plaintiffs represent that, because "Defendant complied with its requirements under the CLRA and agreed early on, before any lawsuit was filed, to modify its packaging in some way ..., the CLRA precluded a damages award at trial." (*Id.* at 9.) Even were monetary relief to be awarded, the Class received something of value—a tea— and thus a premium pricing restitution model would apply, entitling the Class to a refund of at most 20 cents per product. (*Id.* at 10.) The cost of administering these small claims would be prohibitive.

(*Id.*) Accordingly, weighing these considerations, the Court finds that this factor favors approval of the settlement.

## IV. Extent of Discovery Completed and Stage of the Proceedings

This litigation is at an early stage, the parties having only engaged in an early neutral evaluation conference and a case management conference, and no formal discovery has yet been exchanged. However, Plaintiffs claim to have "engaged in substantial informal discovery, reviewing Defendant's financial information, marketing literature, FDCA and Sherman Law rules and regulations, plus the Products' labeling, before and after injunctive relief changes were agreed upon." (*Id.* at 18.) Further, Class Counsel "reviewed FDA guidance documents on dietary supplements, FTC standards, and background evidence relating to the Products' claims." (*Id.*) As it appears that Class Counsel had significant information going into the settlement negotiations, the Court finds that this factor favors approval.

## V. Experience and Views of Counsel

Class Counsel have recommended accepting the Settlement Agreement, and "[t]here is nothing to counter the presumption that counsel's recommendation is reasonable." (*Id.* at 19.) Class Counsel are familiar not merely with the facts of this particular suit, but have also litigated a significant number of class action suits for consumers. (*Id.; see also* Decl. of Ronald A. Marron in Supp. of Mot. for Fees Ex. 1 (Firm Resume), ECF No. 40-1.) Accordingly, the Court finds that this factor weighs in favor of granting final approval.

## VI. Reaction of Class Members to the Proposed Settlement

Plaintiffs claim that the Class "is estimated to contain thousands of members."

(Mot. for Final Approval 19–20, ECF No. 43.) However, no class members have excluded themselves from the class, and only one member has filed an objection. (*See id.* at 19–22; *id.* Ex. 1 (Objection of Larry Canterbury ("Canterbury Obj.")), ECF No. 43–1; Decl. of Exclusions by Class Action Administrator Gajan Retnasaba ¶ 3, ECF No. 42.)

The sole objector, Mr. Larry Canterbury ("Mr. Canterbury"), objects to the proposed award of nearly $300,000 in attorneys' fees and costs when the class will receive no monetary relief. (Canterbury Obj., ECF No. 43–1.) Mr. Canterbury believes that the settlement "benefits [him] and the class nil," and he thinks that he and other consumers, who "paid good money for fraudulent products," "should get something out of this settlement." (*Id.*)

Class Counsel contend that "a fee award to the prevailing party is required by state fee-shifting statutes," and that Mr. Canterbury "ignores the compelling evidence that the Settlement enjoys support from the class, the significant hurdles that Plaintiffs and the Class would face if they were to pursue litigation, including as to damages which are very limited, and each of the other factors followed by courts in the Ninth Circuit." (Mot. for Final Approval 20, ECF No. 43.) Class Counsel point to other settlements providing for only injunctive relief for the class but also attorney's fees, approved by courts in this Circuit, as proof that such settlements can nonetheless be fair and reasonable. (*Id.* at 20–21.)

The Court acknowledges the legitimacy of Mr. Canterbury's concerns. During the July 21, 2014 final approval hearing, the Court asked Class Counsel numerous questions about the requested fees and costs and requested additional briefing and detailed documentation justifying the fees requested. (*See* Minute Order, ECF No.

46; Supplemental Mem. in Supp. of Mot. for Fees & Costs, ECF No. 49.) Further, as detailed later in this Order, the Court has made appropriate adjustments to Class Counsel's lodestar figure.

However, Class Counsel are contractually entitled to fees, and it is fair that they be compensated for the work they have put into this suit and the Settlement. Further, this suit has obtained injunctive relief for the class, so it is inaccurate to say that the Class is getting "nil." While the Court would have preferred that the Settlement provide the Class with some compensation, the arguments Class Counsel have made concerning the attendant difficulties of administering such relief are legitimate, and Class Counsel claim that such relief would have been unavailable had this matter proceeded to trial, anyway. Accordingly, the Court **OVERRULES** Mr. Canterbury's objections.

Ultimately, the single objection and utter lack of exclusions weighs in favor of approving the Settlement.

### VII. Balancing

Given that all of the *Hanlon* factors favor approval of the Settlement Agreement, the Court **GRANTS** the Motion for Final Approval.

## MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

### I. Attorneys' Fees

#### A. *Legal Standard*

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." In a diversity suit, the award of attorneys' fees is governed by state law. *See Winterrowd v. Am. Gen. Annuity Ins. Co.,* 556 F.3d 815,

829 (9th Cir.2009) (citation omitted); *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1024 (9th Cir.2003) (citation omitted).

▮ Here, because there is no common fund, the lodestar analysis applies to Class Counsel's request. The lodestar represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029–30 (9th Cir.1998) (explaining that courts employ the lodestar method of calculating attorneys' fees in injunctive relief class actions, multiplying the hours worked by a reasonable hourly rate). The lodestar figure is a presumptively reasonable fee; however, in rare circumstances, upward or downward adjustment is permissible. *Clark v. City of L.A.,* 803 F.2d 987, 990–91 (9th Cir.1986) (citations omitted).

Class Counsel are contractually entitled to fees. (Settlement Agreement ¶ 9.1, ECF No. 34-2.) Class Counsel urge that the Court should award fees in the amount of $295,573.73 because, in the Settlement Agreement, Defendant agreed to pay fees and costs up to $297,000. (Mot. for Fees 14, ECF No. 40 (citing Settlement Agreement ¶ 9, ECF No. 34-2).) However, the Ninth Circuit has cautioned:

> [W]hen the defendant has agreed that [ ] fees and costs will be paid separately from the class settlement, and the defendant has agreed not to object to class counsel's fee and cost request so long as the request does not exceed a negotiated amount[,] [s]uch an agreement has the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.

*Lobatz v. W. Cellular of Cal., Inc.,* 222 F.3d 1142, 1148 (9th Cir.2000). Accordingly, this Court nonetheless scrutinizes the reasonableness of Class Counsel's fee request.

### B. Analysis

#### i. Reasonableness of Hourly Rates

▮ The U.S. Supreme Court has stated that,

> [t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "The relevant community is that in which the district court sits." *Weeks v. Kellogg Co.,* 2013 WL 6531177, No. CV 0908102(MMM) (RZx), at *32 (C.D.Cal. Nov. 23, 2013) (citing *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 906 (9th Cir.1995)).

The fees requested by Class Counsel, and those this Court ultimately finds reasonable, are as follows:

| Name | Position | Hourly Rate Requested | Hourly Rate Awarded |
| --- | --- | --- | --- |
| Ronald Marron | Principal (admitted 1995) | $715 | $650 |
| Skye Resendes | Associate (graduated/admitted 2011) | $440 | $375 |
| Alexis Wood | Associate (graduated 2009, admitted June 2010) | $425 | $350 |
| Kas Gallucci | Associate (graduated 2012, admitted January 2013) | $400 | $335 |
| Erin Minelli | Associate (graduated/admitted 2010) | $400 | $350 |
| n/a | Law Clerks | $245 | $200 |
| n/a | Paralegals/Legal Assistants | $215 | $150 |

(Mot. for Fees 17, 36, ECF No. 40; Decl. of Ronald A. Marron ("Marron Decl.") 7, ECF No. 40–1.)

To justify the hourly rates they request, Class Counsel point to hourly rates awarded in seven recent class-action settlements. (*See* Decl. of Ronald A. Marron Exs. 3–13, ECF Nos. 49–2, 49–3). In their briefing, Class Counsel cherry-pick hourly rates from these actions to suit their requested rates. (Suppl. Mem. in Supp. of Mot. for Fees 7–10, ECF No. 49.) The full range of rates awarded in the cases Class Counsel cite is as follows:

1. *Vess v. Bank of Am., N.A.*, No. 10–cv–0920 AJB, 2013 WL 5775330, at \*4 (S.D.Cal. Oct. 24, 2013): Alisa A. Martin (admitted 2002; hourly rate of $575); James R. Patterson (admitted 2000; hourly rate of $675); Steven Woodrow (eight years of experience; hourly rate of $550); Sean Reis (eleven years of experience; $460); Camille Bass (fifth-year attorney; hourly rate of $375); Irina Slavina (four years of experience; hourly rate of $345); Megan Lindsey (two years of experience; hourly rate of $335); Jeffrey Kaatz (first-year attorney; hourly rate of $175).

2. *Johansson–Dohrmann v. Cbr Sys., Inc.*, No. 3:12–cv–01115–MMA–BGS, 2013 WL 3864341, at \*10 (S.D.Cal. July 24, 2013): Patrick N. Keegan (admitted 1993; hourly rate of $695); Jason E. Baker (admitted 1998; hourly rate of $375); Brent Jex (admitted 2004; hourly rate of $325); Lisa Magorien (admitted 2008; hourly rate of $245).

3. *Morey v. Louis Vuitton N. Am., Inc.*, No. 11–cv–1517 WQH (BLM), 2014 WL 109194, at \*6–7 (S.D.Cal. Jan. 9, 2014): Gene J. Stonebarger (admitted 2000;

hourly rate of $650); Richard D. Lambert (admitted 2007; hourly rate of $500); Elaine W. Yan (admitted 2011; hourly rate of $350); James R. Patterson (admitted 2000; hourly rate of $675); Allison Goddard (admitted 2000; hourly rate of $675).

4. *Chaikin v. Lululemon USA Inc.*, No. 3:12–CV–02481–GPC–MDD, 2014 WL 1245461, at \*6–7 (S.D.Cal. Mar. 17, 2014): Gene J. Stonebarger (admitted 2000; hourly rate of $650); Richard D. Lambert (admitted 2007; hourly rate of $500); Elaine W. Yan (admitted 2011; hourly rate of $350); James R. Patterson (admitted 2000; hourly rate of $675); Brian J. Lawler (admitted 2002; hourly rate of $500).

5. *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 3:09–MD–02087–BTM (KSC): Timothy G. Blood (admitted 1990; hourly rate of $695); Leslie Hurst (admitted 1995, hourly rate of $585); Thomas O'Reardon, II (admitted 2006; hourly rate of $510); Paula Roach (admitted 2007; hourly rate of $410); paralegals (hourly rate of $150 to $290); document clerk (hourly rate of $225).

6. *In re Quaker Oats Labeling Litig.*, 5:10–CV–00502–RS, at \*7–8 (N.D.Cal. July 29, 2014): Ronald A. Marron (hourly rate of $715); Skye Resendes (hourly rate of $440); Alexis Wood (hourly rate of $425); Kas Gallucci (hourly rate of $400); Erin J. Minelli (hourly rate of $400).

7. *In re Ferrero Litig.*, 583 Fed.Appx. 665 (9th Cir.2014): Ronald A. Marron (hourly rate of $650); Skye Resendes (hourly rate of $385).

Although Class Counsel were awarded the requested rates in *In re Quaker Oats*, that decision came out of the Northern

District; hence, the reasonableness of Class Counsel's hourly rates were assessed relative to fees in the Northern District. *See Weeks*, 2013 WL 6531177, at \*32. Accordingly, those hourly rates are irrelevant here, and the Court will disregard them. Relying, then, on the remaining precedents presented by Class Counsel, the Court determines reasonable rates to be as follows:

■ The Court finds that **$650 per hour,** the amount *Ronald A. Marron* was awarded in *In re Ferrero Litigation,* is a more-than-reasonable hourly rate. Mr. Marron was admitted to the California Bar in 1995. Partners admitted in 1990 and 1993, and therefore having more experience than Mr. Marron, commanded $695 per hour in *Johansson–Dohrmann* and *In re Hydroxycut,* respectively. In *Johansson–Dohrmann,* another partner, admitted in 1998, commanded only $375 per hour. Other attorneys with partner-level experience in the cases Class Counsel cite were awarded between $460 and $675 per hour. The Court's rate of $650 per hour is at the upper end of this range and thus infinitely fair.

■ The Court finds that **$375 per hour** is a reasonable rate for *Skye Resendes.* Although Mr. Marron claims that Ms. Resendes has "work[ed] in the legal field for over 20 years," she was only admitted to the Bar at the end of 2011; previously, she worked as a judicial secretary in the San Diego Superior Court and as a legal assistant at various San Diego law firms. (*See* Firm Resume 2, ECF No. 40–1.) Thus, in actuality, Ms. Resendes is only a third-year attorney. Elaine Yan, also admitted in 2011, was awarded an hourly rate of $350 in *Morey* and *Chaikin.* In light of the even lower rates commanded by attorneys with comparable years of experience in *Vess* and *Johansson–Dohrmann,* $350 per hour seems more than fair.

Given Ms. Resendes' prior legal experience, however—Ms. Yan appears to have gone straight from high school to college to law school—an increase to $375 per hour seems reasonable and appropriate.

■ The Court finds that **$350 per hour** is a reasonable rate for both *Alexis Wood* and *Erin Minnelli.* Both were admitted to the Bar in 2010, although Ms. Minnelli was admitted about six months later than Ms. Wood. They are therefore both fourth-year attorneys, like Irina Slavina in *Vess,* who was awarded an hourly rate of $345 per hour. Given that a fifth-year attorney in *Johansson–Dohrmann* only garnered an hourly rate of $245 per hour, $350 per hour is a generous compromise.

The Court finds that **$335 per hour** is a reasonable rate for *Kas Gallucci.* Ms. Gallucci is a second-year attorney, admitted to the Bar in 2013. In *Vess,* Megan Lindsey, also a second-year attorney, commanded an hourly rate of $335 per hour; accordingly, that rate seems reasonable for Ms. Gallucci as well.

■ As for paralegal and law clerk rates, the Court looks to the rates recently approved in *In re Hydroxycut* and to other recent fee awards in this District.

In *In re Hydroxycut,* Judge Moskowitz approved hourly rates ranging from $150 to $290 for paralegals. In *Grant v. Capital Management Services, L.P.,* Judge Hayes recently approved an hourly rate of $150 for paralegals in a class-action suit. No. 10–cv–2471–WQH (BGS), 2014 WL 888665, at \*6 (S.D.Cal. Mar. 5, 2014). Similarly, Judge Miller approved an hourly rate of $150 for a senior paralegal and $125 for a paralegal in the class action *Reed v. 1–800 Contacts, Inc.,* No. 12–cv–02359 JM (BGS), 2014 WL 29011, at \*8 (S.D.Cal. Jan. 2, 2014). In non-class-action

suits, this District has recently approved the following rates:

- *NWS Corp. v. Dish Network, LLC,* No. 13cv2247–GPC (BGS), 2014 WL 769175, at *6 (S.D.Cal. Feb. 25, 2014): approving hourly rate of $295 for paralegals.
- *Sea Prestigio, LLC v. M/Y TRITON,* 2014 A.M.C. 849, at *6 (S.D.Cal. Feb. 6, 2014): approving hourly rate of $110 for paralegals.
- *Delalat v. Syndicated Office Sys., Inc.,* No. 10cv1273–DMS (NLS), 2014 WL 930162, at *2–4 (S.D.Cal. Jan. 28, 2014): approving hourly rate of $100 for law clerk.
- *Payrolling.com Corp. v. WMBE Payrolling, Inc.,* No. 11–CV–1072–IEG (DHB), 2013 WL 4875004, at *3 (S.D.Cal. Sept. 11, 2013): approving hourly rate of $125 for a paralegal.
- *Schroeter v. Wells Fargo Bank, N.A.,* Civil No. 12cv2052AJB (JMA), 2013 WL 3190696, at *4 (S.D.Cal. June 20, 2013): approving hourly rates of $155 and $140 for paralegals.
- *Kohler Co. v. DomainJet, Inc.,* No. 11–CV–1767 BEN (KSC), 2013 WL 1411940, at *1 (S.D.Cal. Apr. 8, 2013): approving hourly paralegal rates of $175 to $245.
- *Vestin Realty Mortg. II, Inc. v. Klaas,* Civil No. 08–cv–2011 AJB (MDD), 2013 WL 1411852, at *2–3 (S.D.Cal. Apr. 8, 2013): approving hourly paralegal rates of $126.97 and $130.

As a whole, hourly rates of $125 to $150 predominate. Accordingly, the Court will permit **$150 per hour** for *paralegals,* which falls at the upper end of the middle-of-the-range rates.

■ There is less information available concerning hourly rates for law clerks. However, one district court has stated that, "[r]egardless of the level of skill he displays, a law clerk cannot expect to garner fees similar to those earned by a junior associate who is licensed to practice law. A law clerk should nevertheless be awarded slightly more than a paralegal." *Barile v. Allied Interstate, Inc.,* No. 12 Civ. 916(LAP)(DF), 2013 WL 795649, at *6 (S.D.N.Y. Jan. 30, 2013) (citing *Kadden v. VisuaLex, LLC,* No. 11 Civ. 4892(SAS), 2012 WL 6097656 (S.D.N.Y. Dec. 6, 2012); *Castagna v. Madison Square Garden, L.P.,* No. 09 Civ. 10211(LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011); *Allende v. Unitech Design, Inc.,* 783 F.Supp.2d 509, 514–15 (S.D.N.Y.2011)). In light of this, the Court finds a rate of **$200 per hour** to be reasonable and more than fair for *law clerks.*

#### ii. *Reasonableness of Hours Expended*

■ The Supreme Court has stated:

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.

*Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. " 'The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.' " *Gates v. Rowland,* 39 F.3d 1439, 1449 (9th Cir.1994) (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1397–98 (9th Cir.1993)).

Here, Class Counsel claim that the total hours worked, through August 7, 2014, is 589.7. (Suppl. Mem. in Supp. of Mot. for Fees App. 1, ECF No. 49.) During the July 21, 2014 final approval hearing, the Court determined that Class Counsel's fee motion failed to provide sufficiently detailed information for the Court to deter-

mine whether the hours claimed were reasonably expended, and thus requested more detailed records. *See, e.g., Weeks,* 2013 WL 6531177, at *33 (citations omitted). In response to this request, the timesheets provided by Class Counsel in their supplemental briefing are thorough. (*See* ECF No. 51 (sealed).) Having exhaustively reviewed the timesheets, the Court identifies several areas of concern.

■ First, Class Counsel bill separately for each e-mail received or sent on this matter. Almost all of these e-mails are between attorneys and staff at the firm, or from ECF, or otherwise generally administrative in nature. Because Class Counsel round up to the tenth of an hour, the amount billed can quickly add up. For example, on January 10, 2014, Mr. Marron billed for 21 6–minute e-mails, which at his requested hourly rate of $715 adds up to $1501.50. Second, the Court finds troubling the 6–minute intraoffice meetings concerning "strategy" or "status." These entries are not only vague, but also seem more likely to be informal conversations rather than meetings for which billing is appropriate. *See Mogck,* 289 F.Supp.2d at 1195 (citations omitted) (" '[H]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary....* ' This Court doubts that [the firm] would have charged [its client] for all of [the firm's] consultations with one another.").

Courts often discount or altogether exclude hours claimed for intraoffice and administrative e-mails and other intraoffice communications when such communications are the result of overstaffing or inflationary billing practices. *See Payne v. Allied Interstate, Inc.,* No. 12–CV–6136T, 2013 WL 5574641 (W.D.N.Y. Oct. 9, 2013) (criticizing practice of billing for reading and writing internal e-mails and reading electronically generated court notices and accordingly reducing attorney hours by 70% and paralegal hours by 30%); *Dickey v. Allied Interstate, Inc.,* No. 12 Civ. 9359(RJS), 2013 WL 4399212 (S.D.N.Y. Aug. 1, 2013) (reducing hours by 20% where detailed time entries showed numerous entries for 0.1 or 0.2 hours for telephone calls, internal e-mails, internal consultations, and review of court notices); *Pierson v. Gregory J. Barro, PLC,* No. 3:11–CV–312, 2012 WL 1670549 (E.D.Tenn. May 14, 2012) (omitting hours for e-mail correspondence between attorneys); *Lee v. Krystal Co.,* 918 F.Supp.2d 1261, 1269 (S.D.Ala.2013) (explaining that billings for intraoffice communications "are disfavored, and are subjected to close scrutiny to prevent abuse"); *Mogck v. Unum Life Ins. Co. of Am.,* 289 F.Supp.2d 1181, 1194–95 (S.D.Cal.2003) (reducing hours by 10% where counsel "inappropriately billed for communicating with one another and delegating tasks to office personnel," because "[t]his Court doubts that [the firm] would have charged Plaintiff for all of [their] consultations with one another"); *Armur Realty, LLC v. Banco do Brasil,* Civil Action No. 09–2792(SRC), 2011 WL 7052112 (D.N.J. Dec. 12, 2011) (significantly reducing fees where "counsel spent much of their time communicating within and between their firms" and billed separately for "informal meetings and discussions amongst themselves"), *adopted by* 2012 WL 123919 (D.N.J. Jan. 13, 2012); *Andert v. Allied Interstate, LLC,* No. 12 Civ. 7010(PAC), 2013 WL 3833077 (S.D.N.Y. July 17, 2013) (reducing requested fees by 70% because "the number of hours billed is excessive, as the total consists of many '0.1 hours' entries for tasks that entail trivial effort at best," including "unnecessarily duplicative work such as e-mails, telephone calls, [and] direct conversations"); *Chudomel v. Dynamic Recovery Servs., Inc.,* No. 12–CV–05365 (NGG), 2013 WL 5970613 (E.D.N.Y. Nov. 8, 2013) (reducing fees where "the time spent on tasks

appears to be somewhat inflated by the firm's billing practices," which included one lawyer billing one-tenth of an hour for each of the seven times he read or responded to an e-mail in a single day, because "in all likelihood the total time spent on the correspondence was much less"); *Caldwell Independent Sch. Dist. v. L.P. b/n/f Joe P. & Diana P.*, 994 F.Supp.2d 811 (W.D.Tex.2012) (reducing hours from 557.51 to 300 because, "[i]n particular, huge numbers of hours are billed for emails back and forth between co-counsel"); *Barile*, 2013 WL 795649, at *7 ("The Firm has submitted extremely detailed time records, but that very detail often hides exaggeration and excess. For example, in each of these cases, Kimmel Firm attorneys and staff have billed multiple entries of '0.1 hour'—often several on one day—for very brief, mundane tasks such as emailing a document, e-filing, or receiving a notice of appearance or other notification from the Court's automated Electronic Case Filing ('ECF') system. This excessive specificity appears designed to inflate the total number of hours billed, by attributing a separate 6 minutes to each brief task."); *Ryan v. Allied Interstate, Inc.*, 882 F.Supp.2d 628, 637 (S.D.N.Y. 2012) (discounting hours for "excessive internal e-mails" and work that should have been done by lower-billing lawyers).

In total, Class Counsel billed 528.9 attorney hours on this matter. (Suppl. Mem. in Supp. of Mot. for Fees App. 1, ECF No. 49.) A thorough review of Class Counsel's timesheets reveals that Class Counsel billed somewhere in the vicinity of 137 attorney hours for intraoffice e-mails, e-mails from ECF, and 6–minute meetings concerning the case's "strategy" or "status," which represents approximately 25% of the total hours billed in this matter. Accordingly, the Court finds an across-the-board reduction of attorney hours by 13% to be reasonable. This deduction reflects approximately half of the hours billed for intraoffice e-mails, e-mails from ECF, and 6–minute meetings concerning the case's "strategy" or "status."

In summary, the Court permits the following hours, which, multiplied by the hourly rates approved above, results in a lodestar of *$197,318.27*:

| Name | Hours (Orig.) | Hours (Supp.) | Hours (Court) | Hourly Rate (Court) | Lodestar (Court) | Lodestar (Supp.) |
|---|---|---|---|---|---|---|
| Ron Marron | 80.9 | 86.1 | 74.907 | $650 | $48,689.55 | $61,561.50 |
| Skye Resendes | 163.3 | 236.3 | 205.581 | $375 | $77,092.88 | $103, 972 |
| Alexis Wood | 41.3 | 65.8 | 57.246 | $350 | $20,036.10 | $27,965 |
| Kas Gallucci | 83.4 | 90.3 | 78.561 | $335 | $26,317.94 | $36,120 |
| Erin Minelli | 41.2 | 50.4 | 43.848 | $350 | $15,346.80 | $20,160 |
| n/a (law clerks) | 3.7 | 14.3 | 14.3 | $200 | $2,860 | $3,503.50 |
| n/a (paralegals) | 48 | 46.5 | 46.5 | $150 | $6,975 | $9,997.50 |

### iii. Adjustments to the Lodestar

Previously, Class Counsel requested the "very small multiplier of 1.07 to allow for risk and the contingent nature of this case," which they arrived at by taking Defendant's $297,000 cap on fees and costs, subtracting costs of $1,426.27, and then dividing the remainder ($295,573.73) by Class Counsel's purported lodestar ($276,198.50) to arrive at a multiplier (approximately 1.0701496) that maximized their fee award. (Mot. for Fees 10, ECF No. 40.) Now, Class Counsel claim a lodestar of $263,279.50 instead, and again request a multiplier (this time, 1.12) that maximizes their fee award. (Suppl. Mem.

in Supp. of Mot. for Fees App. 1, ECF No. 49.) At the July 21, 2014 final approval hearing, the Court questioned why, if the figure should be adjusted, the adjustment should not be *downward*.[1]

Given that the lodestar is presumptively reasonable and that adjustments should be made only rarely, and because the Court has already adjusted downward Class Counsels' rates and hours to make them reasonable, the Court **DECLINES** to make any adjustment to the lodestar figure. *See Clark*, 803 F.2d at 990–91 (1986). Accordingly, the Court awards attorneys' fees in the amount of *$197,318.27.*

## II. Costs

"An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), even in diversity cases." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir.2003) (citation omitted); *see Drumm v. Morningstar, Inc.*, 695 F.Supp.2d 1014 (N.D.Cal.2010) ("Since the awarding of costs here is procedural, not substantive, federal law governs."); *In re Glacier Bay*, 746 F.Supp. 1379, 1393–94 (D.Alaska 1990) (holding that federal law regarding costs applies rather than "more generously interpreted" state law).

Federal Rule of Civil Procedure 54(d) provides that "costs ... should be allowed to the prevailing party," *as enumerated in 28 U.S.C. § 1920.* Section 1920 provides that

[a] judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

---

1. In their supplemental briefing, Class Counsel claim that "the Court appears to have conflated two concepts—the fact that Defendant offered to make some labeling relief in response to a CLRA letter, and the notion that this was a no-risk case." (Suppl. Mem. in Supp. of Mot. for Fees App. 1, ECF No. 49.) Class Counsel then emphasize that the parties did not produce a signed Settlement Agreement for thirteen months. (*Id.*)

Respectfully, the Court never said this was a "no-risk" case. Rather, at the final approval hearing, the Court stated:

If anything, many of the *Kerr* factors seem to suggest that a downward departure from the lodestar is appropriate. Although this was a contingent-fee matter, it would appear to be a fairly desirable matter. This case involved *little risk* because Defendant apparently agreed to modify its packaging before this lawsuit was even filed, and the case settled early in the proceedings, before discovery even began.

(Emphasis added).

In their motion for preliminary approval, Class Counsel stated that "Defendant ... agreed early on, before any lawsuit was filed, to modify its packaging in some way, subject to negotiation." (Mot. for Prelim. Approval 13, ECF No. 34.) Thus, even though the labeling changes were yet unknown, Class Counsel knew they were going to get something they wanted from Defendant. Accordingly, when they subsequently filed this suit, Class Counsel knew they had a good chance of getting some fees in return for their work. In contrast, often a suit is filed before the defendant agrees to do anything. Comparatively, then, the Court would certainly deem this a low-risk and desirable matter.

Hence, "taxable costs are limited by statute and modest in scope." *Taniguchi v. Kan Pac. Saipan, Ltd.,* —— U.S. ——, 132 S.Ct. 1997, 2006, 182 L.Ed.2d 903 (2012). "Ordinary attorney's travel costs for depositions, pre-trial conferences and trial, long-distance phone calls, Federal Express and local delivery service, office expenses, postage, and typing charges are not 'costs' as that term is used in 28 U.S.C. § 1920, but are in fact out-of-pocket expenses." *In re Glacier Bay,* 746 F.Supp. at 1394 (citations omitted).

Class Counsel request costs in the amount of $1,426.27. (Mot. for Fees 37, ECF No. 40; Suppl. Mem. in Supp. of Mot. for Fees 23 (App. 2), ECF No. 49.) This figure includes the following:

| | |
|---|---|
| Filing fee | $350.00 |
| Process Servers | $50.00 |
| Certified mail postage for CLRA-required notice | $17.65 |
| Mediation | $0 |
| Postage | $11.24 |
| Flat rate charge for case deadline calculations (CompuLaw Deadlines) | $260.00 |
| FedEx overnight deliveries of original documents | $3.72 |
| PACER | $58.30 |
| Mileage and toll roads | $120.72 |
| FDA Freedom of Information Act request fee | $68.00 |
| Photocopies | $442.50 |
| Westlaw research | $14.41 |
| Exemplar packaging | $29.73 |

At the final approval hearing, the Court preliminarily determined that Class Counsel are entitled to costs of $429.73. Under federal law, the filing fee is recoverable as a "[f]ee[ ] of the clerk." 28 U.S.C. § 1920(1). The costs of the exemplar packaging are also recoverable. *See id.* § 1920(4); CivLR 54.1(b)(7)(a). The fees for service of process are permissible under the Local Rules. CivLR 54.1(b)(1). This adds up to $429.73.

However, during the hearing, the Court also rejected the other costs as nontaxable under § 1920. For example, while the Ninth Circuit generally permits photocopying charges to be taxed under 28 U.S.C. § 1920(4), *see Haagen–Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.,* 920 F.2d 587, 588 (9th Cir.1990) (per curiam), the Local Rules only permit the taxing of photocopies in limited circumstances. *See* CivLR 54.1(b)(6). The authority Class Counsel cite for the proposition that costs such as telephone calls, postage, transportation, working meals, photocopies, and electronic research are taxable under § 1920 is from the Southern District of New York. (Suppl. Mem. in Supp. of Mot. for Fees 20, ECF No. 49.) Ninth Circuit law, however, is clear that these types of costs are not recoverable. *See, e.g., Kayser v. McClary,* 875 F.Supp.2d 1167, 1183 (D.Idaho 2012) (online research fees not taxable); *Yasui v. Maui Elec. Co., Ltd.,* 78 F.Supp.2d 1124, 1128 (D.Haw.1999) (postage not taxable); *Liberty Mut. Ins. Grp. v. Panelized Structures, Inc.,* No. 2:10–cv–01951–MMD–PAL, 2013 WL 3013876, at *3 (D.Nev. June 14, 2013) (travel expenses not taxable); *In re Glacier Bay,* 746 F.Supp. at 1394 (travel costs, Federal Express delivery service, and postage not taxable). Other jurisdictions have held that PACER fees are not taxable. *(See, e.g., Bandera v. City of Quincy,* 220 F.Supp.2d 26, 48 (D.Mass.2002); *Doria v. Class Action Servs., LLC,* 261 F.R.D. 678, 686 (S.D.Fla. 2009); *but see Wirtz v. Kan. Farm Bureau Servs., Inc.,* 355 F.Supp.2d 1190, 1213 (D.Kan.2005)).

■ Nonetheless, out-of-pocket costs may be recoverable as *attorneys' fees* if "the charges are not already accounted for in the attorneys' hourly rates." *See Pugach v. M & T Mortg. Corp.*, 564 F.Supp.2d 153, 165 (E.D.N.Y.2008) (citations omitted). Hence, at the final approval hearing, the Court directed Class Counsel to provide proof that the costs claimed were out-of-pocket costs rather than overhead factored into the firm's hourly rates. Class Counsel, however, failed to do so, and instead continued to argue that these costs were recoverable under California Code of Civil Procedure § 1033.5 and/or Rule 54(d) and § 1920. (Suppl. Mem. in Supp. of Mot. for Fees 19–20, ECF No. 49.) For the reasons already provided, Class Counsel are mistaken. Accordingly, the Court **GRANTS** costs in the amount of *$429.73* but **DENIES** the remainder of the costs requested.

### III. Incentive Awards

■ Finally, Class Counsel seek incentive awards of $1,500 for each of the Class Representatives. (Mot. for Fees 32, ECF No. 40.) Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir.2009) (citations omitted). In deciding whether to give an incentive award, the Court may consider, *inter alia:*

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995) (citations omitted).

■ Class Counsel justify the requested incentive awards on the grounds that the Class Representatives "have been significantly involved in this action from its inception [in 2012] to settlement." (Mot. for Fees 33, ECF No. 40.) Class Counsel provide examples of other incentive awards awarded in injunctive-only relief cases to establish the reasonableness of this figure. (*Id.* at 33–34.) Although the risk, personal difficulties, and amount of time Class Representatives likely had to commit to this action was minimal, the awards do appear to be in line with those awarded in similar actions. Accordingly, the Court **GRANTS** the requested incentive awards.

### CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiffs' Motion for Final Approval and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards.

Defendant **SHALL PAY** notice costs of *$50,000* to Class Counsel, fees in the amount of *$197,318.27* to Class Counsel, and incentive awards of *$1,500* to each of the Class Representatives, at the time and in the manner provided in the Settlement Agreement.

Class Counsel **SHALL FILE** a bill of costs in accordance with Federal Rule of Civil Procedure 54 for the *$429.73* this Court deems taxable.

The Court **HEREBY FURTHER ORDERS:**

**1. Implementation of Settlement.** The Court directs the parties to implement the Settlement Agreement according to its terms and conditions.

**2. Class Members' Rights to Object and Appeal.** Any class member who failed to timely and validly object to the Settlement has waived his or her objection. Any class member seeking to appeal the Court's rulings must: (1) move to intervene upon a representation of inadequacy of counsel (if they did not object to the proposed Settlement under the terms of the Settlement); (2) request a stay of implementation of the Settlement; and (3) post an appropriate bond. Absent satisfaction of all three requirements, Defendant is authorized, at its sole option and in its sole discretion, to proceed with the implementation of the Settlement, including before the Effective Date, even if such implementation would moot any appeal.

**3. Release.** The release set forth in the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of the entry of this Final Order, and forever discharges the Released Parties (as defined in the Agreement) from any claims or liabilities released by the Settlement, including the Released Claims (as defined in the Agreement), and including without limitation a waiver of all rights under Section 1542 of the California Civil Code. This Release covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Class Counsel, the Settlement of this action, the administration of such Settlement, and the Released Claims, except to the extent otherwise specified in this Order and the Settlement Agreement.

**4. Binding Affect and Permanent Injunction.** The Settlement and this Final Order shall be forever binding on Plaintiffs and all other class members, as well as their heirs, executors and administrators, successors, and assigns, and shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the fullest extent allowed by law.

The Court hereby **PERMANENTLY ENJOINS** all class members from filing, commencing, prosecuting, intervening in, maintaining, participating (as class members or otherwise) in, or receiving any benefits from, any lawsuit (including putative class action lawsuits), arbitration, administrative or regulatory proceeding, or order in any jurisdiction asserting any claims released by this Order; and from organizing class members into a separate class to pursue as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) asserting any claims released by this Order. Nothing in this paragraph, however, shall require any class member to take any affirmative action with regard to other pending class-action litigation unrelated to this action in which he or she may be an absent class member. Defendant has reserved the right to file motions or to take other actions to enforce the release provisions of the Settlement Agreement and of this injunction, as Defendant may deem appropriate. The Court finds that issuance of this permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the action and its judgments.

**5. Modification of Settlement Agreement.** The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to and modifications and expansions of the Settlement Agreement, if such changes are consistent with this Order and do not limit the rights of any person or

class member entitled to relief under the Settlement Agreement.

**6. Enforcement of Settlement.** Nothing in this Final Order shall preclude any action to enforce or interpret the terms of the Settlement. Any action to enforce or interpret the terms of the Settlement shall be brought solely in this Court.

**7. Retention of Jurisdiction.** The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, and this Final Order, and for any other necessary and appropriate purpose. Without limiting the foregoing, the Court retains continuing jurisdiction over all aspects of this case, including, but not limited to, any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement; the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder; the Settlement Notice and sufficiency thereof; any objection to the Settlement; any request for exclusion from the certified Class; the adequacy of representation by Class Counsel and/or Class Representatives; the amount of attorneys' fees and litigation expenses to be awarded Class Counsel; the amount of any incentives to be paid to Class Representatives; any claim by any person or entity relating to the representation of the Class by Class Counsel; to enforce the release and injunction provisions of the Settlement and this Order; any remand after appeal or denial of any appellate challenge; any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement; and all other issues related to this action and Settlement. Further, the Court retains continuing jurisdiction to enter any other necessary or appropriate orders to protect and effectuate the Court's retention of continuing jurisdiction, provided that nothing in this paragraph is intended to restrict the ability of the parties to exercise their rights under the Settlement Agreement.

**8. No Admissions.** This Final Order and the Settlement, all provisions herein or therein, all other documents referred to herein or therein, any actions taken to carry out this Final Order and the Settlement, and any negotiations, statements, or proceedings relating to them shall not be construed as, offered as, received as, used as, or deemed to be evidence of any kind, including in this action, any other action, or any other judicial, administrative, regulatory, or other proceeding, except for purposes of obtaining approval of the Settlement and the entry of judgment in the action, enforcement or implementation of the Settlement, or supporting any defense by Defendant based on principles of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, setoff, or any other theory of claim preclusion, issue preclusion, release, injunction, or similar defense or counterclaim to the extent allowed by law. Neither the Settlement Agreement nor any related negotiations, statements, mediation positions, notes, drafts, outlines, memoranda of understanding, or Court filings or proceedings relating to the Settlement or Settlement approval shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession by any person, including, but not limited to, of any liability or wrongdoing whatsoever on the part of Defendant or as a waiver by Defendant of any applicable defense, including without limitation any applicable statute of limitation.

**9. Dismissal of Action.** This action, including all individual and Class claims resolved in it, is hereby **DISMISSED** on the merits **WITH PREJUDICE,** without an award of attorneys' fees or costs to any part except as otherwise provided in this Order.

**IT IS SO ORDERED.**